COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 

 


 
 
  
 JAIME LUEVANO,
  
                            
 Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                            
 Appellee.
 
 
  
   '
     
   '
     
   '
     
   '
     
   '
     
  '
 
  
 
 
  
  
 No.
 08-10-00154-CR
  
 Appeal from the
  
 409th District Court
  
 of El
 Paso County, Texas
  
 (TC#20070D04788)
  
 
 


 

                                                                  O
P I N I O N

Jaime
Luevano appeals his conviction for burglary of a habitation, a first degree
felony.[1]  We affirm.

                                 FACTUAL AND PROCEDURAL BACKGROUND

In September 2007, nine-year-old A.C.
lived in the home of her father along with her grandmother and uncle.  A.C. and her
family spent the night of September 2, 2007, at a church bazaar where A.C.
bought a glow-in-the-dark necklace.  At
around midnight, the family returned home and went to bed.  In the early morning of September 3, 2007,
A.C. awoke because she
felt something licking her buttocks.  At
first she thought it was her dog, but when she opened her eyes she saw a
man.  She was able to identify Appellant as the man
licking her because she saw his face in the light from the glow-in-the-dark
necklace hanging over her bed.  At that point, A.C. screamed, the man
ran, and A.C. went to her grandmother’s room. 
A.C. told her grandmother that someone had broken into the house
and that a man with a ponytail had licked her buttocks.  A.C.’s grandmother got out of bed to look
around and found that the front door was unlocked.  She checked outside of the home, but did not
see anyone.  According to A.C.’s
grandmother, A.C. appeared frightened and was crying.  Because A.C. had constant nightmares, the
family decided not to call the police because they believed A.C. had another
bad dream.  The next morning A.C.
repeated the same story to her family and her father called the police.  Crime Scene Unit Officer Juan Montelongo was
dispatched to A.C.’s home on a burglary of a habitation.  Montelongo testified that when he arrived at
the home, police were already on the scene, and based on what he was told, he
believed there was potential evidence at the scene.  Montelongo took pictures of the home and hoped
to collect latent fingerprint and DNA evidence. 
Because A.C. was traumatized and because she was already familiar with
Officer Jessica Martinez, Montelongo requested that Martinez collect DNA swabs
from A.C.  Montelongo instructed Martinez
on how to collect DNA evidence from A.C., but he was not in the room when
Martinez performed the collection. 
Martinez took two swabs from A.C.’s buttocks region and two swabs from
another area to be used as controls to rule out A.C.’s DNA.  After Martinez collected the DNA evidence,
she immediately handed it over to Montelongo who then completed the required
paperwork and turned it into the property office.  Detective Mary Beth Pena of the Crimes
Against Children Unit was assigned to the case. 
On September 3, 2007, Pena conducted a forensic interview with A.C.  She and her partner, Detective Bowling also
took statements from A.C.’s father, grandmother, and uncle.  The next day, Pena showed A.C. a photo lineup,
and A.C. identified Appellant as the suspect.[2]  After concluding that an offense did occur,
an arrest warrant was issued for Appellant for the offense of burglary of a
habitation with intent to commit an aggravated sexual assault.  A search warrant was also issued to obtain
buccal swabs from Appellant’s mouth.

On September 13,
2007, Montelongo submitted the DNA evidence collected from both A.C. and
Appellant for DNA testing to the Texas Department of Public Safety Crime
Laboratory.  The DPS Crime Lab requested buccal
swabs from A.C., which would be used as a control during the DNA analysis.  Christine Ceniceros, a forensic scientist
with the DPS Crime Lab, compared Appellant’s known DNA profile with the DNA
extracted from the buttocks swabs that had been collected from A.C. by Officer
Martinez.  She determined that the DNA
extraction from the buttocks sample contained a mixture of DNA that was
consistent with DNA from both A.C. and Appellant.  Ceniceros’ written report indicated that with
respect to Appellant’s DNA, the probability of selecting an unrelated person at
random who could be a contributor to this DNA profile is approximately 1 in
13.96 billion for Caucasians, 1 in 21.2 billion for Blacks, and 1 in 5.362
billion for Hispanics.  Ceniceros also determined
that Appellant could not be excluded as a contributor
to the DNA profile obtained from the buttocks swabs.

At trial, A.C.’s father testified that
Appellant did not have consent to enter his home.  A.C. made an in-court identification of
Appellant as the man who entered her bedroom and licked her buttocks.  Appellant testified in his own defense.  He stated that he had been asleep in his home
the morning of September 3, and was startled by the police banging on his door
that morning.  He further testified that
he never knew A.C. prior to this incident. 
Appellant claimed that A.C. was lying, and that she was brainwashed by
the State.  The jury rejected Appellant’s
defense, found him guilty of burglary of a habitation with intent to commit a
felony as charged in the indictment, found the enhancement paragraph true, and
assessed his punishment at life imprisonment. 
This appeal followed.

DISCUSSION

Appellant raises ten issues
on appeal.  In
Issue One, Appellant contends that the trial court erred in submitting a jury
charge that allowed a non-unanimous verdict.

Unanimous Verdict

Jury verdicts in criminal cases must be unanimous.  Cosio v. State, 353 S.W.3d 766, 771
(Tex. Crim. App. 2011); Ngo v. State, 175 S.W.3d 738, 745 (Tex. Crim.
App. 2005); Tex. Const. art. V, §
13; Tex. Code Crim. Proc. Ann.
art. 36.29(a) (West 2006).  The unanimity
requirement is satisfied when each juror agrees the defendant committed a
single offense.  Ngo, 175 S.W.3d
at 745; see Bundy v State, 280 S.W.3d 425, 431 (Tex. App. – Fort Worth
2009, pet. ref’d).  However, the jury is
not required to agree that the offense was committed in one specific way or
even with one specific act.  Ngo,
175 S.W.3d at 745-46; Landrian v. State, 268 S.W.3d 532, 535 (Tex. Crim.
App. 2008) (citing Jefferson v. State, 189 S.W.3d 305, 312 (Tex. Crim.
App. 2006)).

To determine the offense about which a jury must
reach a unanimous decision, we evaluate whether the statute defining the
offense created multiple separate offenses or only a single offense with
multiple methods or alternate means of commission.  Pizzo v. State, 235 S.W.3d 711, 714
(Tex. Crim. App. 2007); see also Martinez v. State, 129
S.W.3d 101, 103 (Tex. Crim. App. 2004); Kitchens v. State, 823
S.W.2d 256, 258 (Tex. Crim. App. 1991).  Our
first step is to apply basic rules of grammar to the applicable statutory text
to distinguish between the essential and nonessential elements.  Pizzo, 235 S.W.3d at 714.  The essential elements of an offense are:  (1) the subject, or defendant; (2) the main
verb; (3) the direct object of the main verb, if required; (4) the specific
occasion; and (5) the requisite mental state. 
Id. at 714-15.  The nonessential
elements for which unanimity is not required are typically adverbial phrases
describing how the offense can be committed. 
Id. at 715.  When the jury
is allowed to choose between alternate means of commission there is no
violation of the unanimity requirement.  Id.

In the present case, Appellant was charged with
burglary of a habitation with intent to commit a felony pursuant to Texas Penal
Code section 30.02(a)(1).  See Tex. Penal Code Ann. § 30.02(a)(1) (West
2011).  The
gravamen of a burglary offense is the nonconsensual entry of the habitation
with the requisite mental state.  Ex
parte Cavazos, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006).  The jury charge in relevant part, read as
follows:

Now if you find
from the evidence beyond a reasonable doubt that on or about the 3rd day of
September 2007 in El Paso County, Texas the Defendant JAIME LUEVANO,

 

Paragraph A

 

did
then and there intentionally or knowingly, without the effective consent of
[J.C.], the owner, enter a habitation, with intent to commit a felony, to wit: Aggravated
Sexual Assault of a Child, 

 

Or 

 

Paragraph B

 

did then and
there intentionally or knowingly, without the effective consent of [J.C.], the
owner, enter a habitation, with intent to commit a felony, to wit: Indecency
with a Child, then you shall find the Defendant Guilty of Burglary of
Habitation as alleged in the Indictment (Verdict Form A). 

 

Unless you so find
beyond a reasonable doubt or you have a reasonable doubt thereof, you shall
find the Defendant, JAIME LUEVANO, Not Guilty of Burglary of a Habitation. (Verdict
Form B) [Emphasis added].  

 

Appellant argues that this charge improperly
allowed the jury to convict him of burglary of a habitation with the intent to
commit a felony without requiring the jury to unanimously agree on aggravated
sexual assault of a child or indecency with a child as the underlying
offense.  We disagree.  Neither the acts of aggravated sexual assault
of a child or indecency with a child constitute the essential elements or the
gravamen of a burglary of a habitation offense. 
See Tex. Penal Code Ann.
§ 22.01(a)(1) (West 2011).  Rather the
two acts are alternate means of committing the offense. See Martinez,
129 S.W.3d at 103; Kitchens, 823 S.W.2d at 258.  Accordingly, we hold there was no error
because the jury was only required to unanimously agree that Appellant
committed burglary of a habitation with intent to commit a felony, and did not
have to unanimously agree on the alternate means of commission.  See Martinez, 129 S.W.3d at 103; Kitchens,
823 S.W.2d at 258; see also Brown v. State, No. 05-07-00939-CR, 2010 WL
425063, at *6 (Tex. App. – Dallas Feb. 8, 2010, no pet.).  Issue One is overruled.

Double
Jeopardy

In
Issue Two, Appellant argues that the State caused a mistrial by knowingly
failing to exercise its peremptory challenge to exclude a juror who was
recognized by A.C., and therefore a retrial of the case was barred by the
Double-Jeopardy Clause.[3]  U.S.
Const. amend. V, XIV, § 1; Tex.
Const. art. I, § 10.

The
Fifth Amendment’s Double-Jeopardy Clause protects a criminal defendant from
repeated prosecutions for the same offense. 
Oregon v. Kennedy, 456 U.S.
667, 671, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982).  However, when a mistrial is granted at the
accused’s request, double jeopardy does not bar a retrial.  Id.
at 672-73.  Double jeopardy bars retrial
after the accused shows that the prosecutor’s conduct was intentional in
provoking him to move for mistrial.  Id. at 679.  In determining whether the prosecutor
intended to provoke the accused into moving for a mistrial, we must focus on
“the objective facts and circumstances of the prosecutor’s conduct and the
events which led to that conduct.”  Ex parte Peterson, 117 S.W.3d 804, 815
(Tex. Crim. App. 2003), overruled in part
on other grounds by Ex parte Lewis, 219 S.W.3d 335, 371 (Tex. Crim. App.
2007).

The
State argues that Appellant failed to preserve this issue for review by
presenting an inadequate record.  We
agree.  The record before us consists
only of Appellant’s special plea of jeopardy and the reporter’s record from a
pretrial hearing on the plea.  While the
reporter’s record shows that the trial court and Appellant’s counsel briefly
discussed the events of the prior trial and that Appellant’s plea was denied
because the mistrial was based on manifest necessity, the record is not
sufficiently developed to address whether the State’s conduct caused a mistrial
at Appellant’s request.  See Anderson v. State, 635 S.W.2d 722,
725 (Tex. Crim. App. 1982); Dedmon v.
State, 478 S.W.2d 486, 489 (Tex. Crim. App. 1972).

Even
assuming the record before us is sufficient, we do not find any evidence to
establish that prosecutorial misconduct caused the mistrial.  The record shows that a mistrial was
requested by Appellant because A.C. recognized one of the jurors as her school
teacher, and that the mistrial was based on manifest necessity.  Under these facts, double jeopardy did not
attach and retrial is not barred.  See Simmons v. United States, 142 U.S.
148, 12 S.Ct. 171, 35 L.Ed. 968 (1891) (manifest necessity for the mistrial
when a juror was found to be acquainted with the accused); Kennedy, 456 U.S. at 672 (double jeopardy is not implicated and
retrial is permitted where mistrial is based on manifest necessity).  Issue Two is overruled.

Cruel
and Unusual Punishment

In
Issue Three, Appellant contends that the sentence imposed by the jury is harsh
and disproportionate to the offense of burglary of a habitation and constitutes
a violation of the Eighth Amendment of the United States Constitution.  At sentencing, Appellant pleaded true to an
enhancement paragraph alleging two prior felony convictions and the jury
assessed his punishment at life imprisonment.

Generally,
punishment assessed within the statutory range is not unconstitutionally cruel
or unusual.  See Rummel v. Estelle, 445 U.S. 263, 284-85, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); Ex parte Chavez, 213 S.W.3d 320, 323-24 (Tex.
Crim App. 2006); Castaneda v. State, 135 S.W.3d 719, 723 (Tex.
App. – Dallas 2003, no pet.).  However,
if a sentence within the statutory range is disproportionate to the crime, it
may still run afoul of the Eighth Amendment. 
See Solem v. Helm, 463 U.S. 277, 290, 103 S.Ct. 3001,
3009, 77 L.Ed.2d 637 (1983).  The
permissible range of confinement for burglary of a habitation, a first-degree
felony offense, enhanced by two prior and sequential felony convictions, is
life or for any term of not more than ninety-nine years or less than
twenty-five years.  Tex. Penal Code Ann. § 12.42(d) (West
2011).

Here,
the life sentence imposed by the jury was within the allowable statutory range,
and therefore, was not unconstitutionally harsh and disproportionate.  See id.  Furthermore, the jury considered evidence of
Appellant’s three prior felony convictions, one for burglary of a habitation
and committing or attempting to commit sexual assault and two concurrent
convictions for failure to stop and render aid. 
In determining the proper sentence, the jury could also have considered
that they found Appellant guilty of a separate burglary of a habitation offense
in cause number 20070D04789.

As
the State points out there is a legitimate need to deter repeat offenders who
commit multiple felonies.  See Rummel, 445 U.S. at 284.  Particularly as here in what is an all too
common scenario of illegal entry of a home for the purpose of committing a felony.  Because the sentence imposed was within the
allowable statutory range, we will not disturb the jury’s assessment on
appeal.  See Castaneda, 135 S.W.3d at 723; see also Buster v. State, 144 S.W.3d 71, 81 (Tex. App. – Tyler
2004, no pet.) (in determining whether a sentence is disproportionate to the
crime, the present offense as well as appellant’s criminal history is
considered).  Issue Three is overruled.

Evidentiary
Sufficiency

In
Issue Four, Appellant argues that the evidence adduced at trial was legally and
factually insufficient to support his conviction.  Specifically, Appellant argues that the State
failed to produce sufficient evidence showing that Appellant entered the home
of A.C.’s father, without consent, and that Appellant had the requisite intent
to commit a felony.  We reject
Appellant’s factual insufficiency argument because Texas no longer recognizes
factual-insufficiency claims.  Brooks v. State, 323 S.W.3d 893, 912
(Tex. Crim. App. 2010).

In
a legal sufficiency review, we consider all the evidence in the light most
favorable to the verdict, and determine whether a rational juror could have
found the essential elements of the offense beyond a reasonable doubt.  See
Jackson v. Virginia, 443 U.S. 307, 319 (1979); Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).  It is the responsibility of the jury to
resolve conflicts in the testimony, to weigh the evidence, and to make
reasonable inferences from the evidence. 
Hooper, 214 S.W.3d at 13; Brooks, 323 S.W.3d at 899.  The jury can accept or reject all or part of
the evidence presented.  Margraves v. State, 34 S.W.3d 912, 919
(Tex. Crim. App. 2000).  On appeal, we do
not reweigh the evidence and we do not substitute our own judgment for that of
the jury.  King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).  Any
evidentiary inconsistencies are resolved in favor of the verdict.  Curry
v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

A
person commits the offense of burglary of a habitation if, without the
effective consent of the owner, he enters a habitation with intent to commit a
felony.  TEX. PENAL
CODE
ANN. § 30.02(a)(1) (West
2011).  A person commits the offense of
aggravated sexual assault
of a child if he sexually assaults a child younger than 14 years
of age.  Id. § 22.021(a)(1),
(2)(B). A person commits the offense of indecency
with a child by contact if he engages in sexual
contact with the child or causes the child
to engage in sexual contact.  Id. § 21.11(a)(1).

Where the charge is burglary
with intent to commit a felony, the offense is complete whether the intended
felony is committed, as long as the nonconsensual entry is made with the intent
to commit the felony alleged.  Jimenez v. State, 804 S.W.2d 334, 341
(Tex. App. – San Antonio 1991, pet. ref’d). 
Intent, identity, and entry may be proven by circumstantial
evidence.  See Moore v. State, 54 S.W.3d 529, 539 (Tex. App. – Fort
Worth 2001, pet. ref’d) (intent); Earls v. State, 707
S.W.2d 82, 85 (Tex. Crim. App. 1986)
(identity); Gilbertson v. State, 563
S.W.2d 606, 608 (Tex. Crim. App. 1978) (entry); Richardson v. State, No. 05-02-00786-CR, 2003 WL 21525315, at *2
(Tex. App. – Dallas July 8, 2003, pet. ref’d) (not designated for publication)
(jury’s verdict supported by legally sufficient evidence where victim made an
in-court identification of assailant).

Appellant
argues that the evidence is insufficient because there was no evidence of entry
as none of his fingerprints were found in the home.  However, entry and identity can be proven by
circumstantial evidence.  See id.  Here, A.C. made an in-court
identification of Appellant as the man who licked her buttocks.  Ceniceros, the DPS Crime Lab forensic
scientist, testified that the DNA extracted from the buttocks swabbing was
consistent with Appellant’s DNA.  Appellant
also contends that he could not be convicted of aggravated assault or indecency
with a child because there was no evidence showing that he touched the child’s
anus, breast, or any part of her genitals and no evidence showing that he
touched any part of the child with his anus, breast, or genitals.  However, the State is not required to prove
the actual commission of the felony to prove burglary of a habitation, as long
as the nonconsensual entry is made with the intent to commit the felony
alleged.  See Jimenez, 804 S.W.2d at 341.

In
this case, the jury could have reasonably concluded that Appellant’s intent, in
entering the home of A.C.’s father without consent, entering A.C.’s bedroom,
and licking her buttocks was to commit aggravated sexual assault of a child or
indecency with a child.  See Sendejo v. State, 26 S.W.3d 676, 678
(Tex. App. – Corpus Christi 2000, pet. ref’d) (evidence was legally sufficient
to support burglary of habitation conviction with intent to commit indecency
with a child where defendant touched child’s leg near her genital area).  Reviewing
the evidence in the light most favorable to the verdict, we find that the
evidence was legally sufficient to support the jury’s verdict that Appellant
intentionally entered the home of A.C.’s father, without consent and intended
to commit a felony.   See TEX. PENAL
CODE
ANN. § 30.02(a)(1) (West 2011); Jackson, 443 U.S. at 319; Brooks, 323 S.W.3d at 895.  Issue Four is overruled.

Motion
for Mistrial

In
Issue Five, Appellant contends that the trial court erred in denying his
request for mistrial after the jury heard Agustin Vital, the State’s witness
and Appellant’s neighbor, testify that he knew for a fact that Appellant is a
registered sex offender.  Without
elaboration, Appellant maintains that the witness’s statement was so
inflammatory that its prejudicial effect could not be cured by the trial
court’s instruction to disregard.

A
mistrial is the trial court’s remedy for improper conduct that is so harmful
that the case must be redone.  Hawkins
v. State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).  A mistrial is required when the improper
reference is of such character as to suggest the impossibility of withdrawing
the impression produced on the minds of the jurors.  Grotti v. State, 209 S.W.3d
747, 776 (Tex. App. – Fort Worth 2006, pet. granted), aff’d by, 273 S.W.3d 273 (Tex. Crim. App. 2008); Ladd v. State, 3
S.W.3d 547, 567 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1070, 120
S.Ct. 1680, 146 L.Ed.2d 487 (2000).  On
appeal, a trial court’s denial of a motion for mistrial will be upheld on
appeal absent an abuse of discretion.  Webb
v. State, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007); Hawkins, 135
S.W.3d at 77; Ladd, 3 S.W.3d at 567.

We discern no abuse of discretion on the part of
the trial court in its denial of Appellant’s request for mistrial.  While the statement is prejudicial, it is not
of such character to suggest the impossibility of withdrawing the impression
produced on the minds of the jurors. 
Here, the jury was promptly told to disregard the statement that Vital
knew Appellant was a registered sex offender. 
Normally, a prompt instruction to disregard will cure the prejudicial
effect associated with an improper question and answer.  Ovalle v. State, 13 S.W.3d 774, 783
(Tex. Crim. App. 2000).  In the absence of evidence that it did
not, we presume the jury followed the trial court’s instruction to
disregard.  Orr v. State, 306
S.W.3d 380, 405 (Tex. App. – Fort Worth 2010, no pet.).

The trial court could have reasonably concluded
that a mistrial was not justified because Vital’s statement was not so
inflammatory that its prejudicial effect could not be cured by an instruction
to disregard.  See Brownlee v. State,
No. 11-08-00264-CR, 2010 WL 1952426, at *2 (Tex. App. – Eastland May 13, 2010,
pet. ref’d) (finding no abuse of discretion in the trial court’s denial of a
mistrial where police officer stated that he knew defendant’s address because
that was the address defendant used when he registered as a sex offender); Spencer
v. State, No. 08-10-00262-CR, 2011 WL 6093381, at *2-3 (Tex. App. – El Paso
Dec. 7, 2011, pet. ref’d) (denial of motion for mistrial upheld where police
stated that he asked defendant whether he was a sex offender).  Because Appellant fails to explain how Vital’s
statement influenced the jury such that an instruction to disregard could not
have cured any prejudicial effect and because we presume the jury followed the
trial court’s instruction in the absence of evidence to the contrary, we cannot
conclude the trial court abused its discretion in denying Appellant’s request
for mistrial.  See Ovalle, 13 S.W.3d at 783; Orr, 306 S.W.3d at 405.  Issue Five is overruled.

Admission of Evidence

We
address together Issues Six, Seven, and Nine, challenging the trial court’s
admission of evidence that, prior to trial, had been the subject of Appellant’s
motions to suppress.  In Issue Six,
Appellant argues that the trial court erred in admitting A.C.’s DNA evidence
because the State failed to establish a proper chain of custody.  In Issue Seven, Appellant contends that his
DNA tests should have been excluded as evidence because the collection of his
DNA sample violated his Fourth, Fifth, and Sixth Amendment rights and Texas
Rule of Evidence 403.  Similarly, in
Issue Nine, Appellant argues that the trial court erred in not excluding the
photo array in which A.C. identified him as the man who licked her buttocks.

We review a trial court’s decision
to admit evidence under an
abuse of discretion standard.  Oprean v. State, 201 S.W.3d 724, 726 (Tex.
Crim. App. 2006); Martinez v.
State, 867 S.W.2d 30, 39
(Tex. Crim. App. 1993).  We will uphold the trial court’s
decision if it falls within the zone of reasonable disagreement.  Oprean, 201 S.W.3d at 726;
Montgomery v. State, 810 S.W.2d 372,
391 (Tex. Crim. App. 1991) (op. on reh’g).

In
response to Issues Six, Seven, and Nine, the State asserts that Appellant has
failed to preserve these three issues for review due to defense counsel’s
affirmative statement at trial that he had “no objection” to the admission of
the same evidence about which he now complains on appeal.

The
record shows that Appellant moved to suppress DNA evidence collected from both
A.C. and Appellant, and the photo array identification provided by A.C.  After conducting hearings, the trial court
denied Appellant’s motions to suppress.  At
trial, when the State moved to admit A.C.’s buccal swabs, Appellant’s DNA
evidence, and the photo array, the trial court asked if there were any
objections, and defense counsel affirmatively answered, “No objection.”

Ordinarily,
the defendant is not required to object to the admission of evidence at trial
to preserve error when a pretrial motion to suppress is denied.  Garza
v. State, 126 S.W.3d 79, 84 (Tex. Crim. App. 2004).  Nevertheless, when the defendant
affirmatively states that he has “no objection” to the same evidence when it is
later introduced at trial, he waives any error related to its admission into
evidence.  Dean v. State, 749 S.W.2d 80, 83 (Tex. Crim. App. 1988); Bennett v. State, 831 S.W.2d 20, 21
(Tex. App. – El Paso 1992, no pet.). 
Because defense counsel affirmatively stated that he had no objection
when A.C.’s buccal swabs, Appellant’s DNA evidence, and the photo array were
offered into evidence at trial, Appellant waived any alleged error for our
review and has waived his right to complain on appeal that the evidence was
illegally obtained.  See Dean, 749
S.W.2d at 83; Holmes v. State, 248
S.W.3d 194, 196 (Tex. Crim. App. 2008).

Improper
Chain of Custody Argument

Because
Appellant objected to the admission of the buttocks swabs taken from A.C. on
the ground of improper predicate, he has properly preserved this issue for our
review.  As part of his sixth issue on
appeal, Appellant contends that the trial court erred in admitting the buttocks
swabs because the State failed to validate the beginning and end of the chain
of custody of the swabs.

A
chain of custody is sufficiently authenticated when the State establishes the
beginning and the end of the chain, particularly when the chain ends at a
laboratory. Martinez v. State, 186 S.W.3d 59, 62 (Tex. App. – Houston
[1st Dist.] 2005, pet. ref’d).  Absent
proof of tampering, most problems with the chain of custody do not affect the admissibility
of evidence, but rather go to the weight of the evidence.  Lagrone v. State, 942 S.W.2d 602, 617
(Tex. Crim. App. 1997).  The State need
only prove the beginning and end of the chain of custody; it is not required to
show a moment-by-moment account of the location of evidence from the time of
seizure.  Shaw v. State, 329 S.W.3d 645, 654 (Tex. App. – Houston [14th
Dist.] 2010, pet. ref’d).

The
record reflects that Officer Martinez collected two buttocks swabs from A.C.,
placed the swabs in envelopes, sealed the envelopes, and immediately handed the
envelopes to Officer Montelongo. 
Montelongo testified that when the envelopes were handed to him he
sealed and labeled them with the case number and his initials, and then placed
them in the evidence locker.  Montelongo
testified that a crime scene technician would come by every morning to pick up
any evidence in the locker and take it to the property office.  At a later point in time, Montelongo signed
out from the property office the evidence which remained sealed and appeared
not to have been tampered with and personally delivered the evidence to the DPS
Crime Lab for analysis.

Christine
Ceniceros, a forensic scientist at the DPS Crime Lab, testified that the
evidence was secured in the evidence vault by Patricia Garcia, an evidence
technician.  No one other than Ceniceros
and Garcia handled the evidence at issue. 
When Ceniceros received the evidence for DNA testing it was labeled and
identified, not tampered with, and was sealed.

Because
the record sufficiently establishes the beginning and end of the chain, and
there is no evidence of tampering with the evidence, we find that the trial
court did not err in admitting the buttocks swabs.  See
Stoker v. State, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989); see also Torres v. State, No.
08-09-00266-CR, 2011 WL 3199065, at *3 (Tex. App. – El Paso Jul. 27, 2011, no
pet.).  Accordingly, Issues Six, Seven,
and Nine are overruled.

Right
to Cross-Examine Regarding Prior Sexual Abuse Allegations

In Issue Eight, Appellant argues that because he
was unable to cross-examine Detective Bowling, A.C.’s grandmother, or A.C.’s
father about allegations of sexual abuse A.C. made against her grandmother and
father, his Sixth Amendment right to cross-examine and Texas Rule of Evidence
404(b) were violated. He maintains that the false allegations made by A.C. are
admissible under the rules of evidence to attack A.C.’s credibility and to show
the modus operandi of the child.

Similar
to our review of a trial court’s decision to admit or exclude evidence, we use
an abuse of discretion standard in reviewing a trial court’s decision to limit
cross-examination. Sansom v. State, 292 S.W.3d 112, 118 (Tex. App. –
Houston [14th Dist.] 2008, pet. ref’d) (citing
Matchett v. State, 941 S.W.2d 922, 940 (Tex. Crim. App. 1996)) and
will uphold the ruling so long as it lies within the zone of reasonable
disagreement.  Montgomery, 810 S
W.2d at 391.

The Sixth Amendment guarantees a criminal defendant
the right to confront the witnesses against him.  U.S.
Const. Amend.
VI; Pointer v. Texas, 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d
923 (1965).  “[T]he right of
cross-examination by the accused of a testifying State’s witness includes the right
to impeach the witness with relevant evidence that might reflect bias,
interest, prejudice, inconsistent statements, traits of character affecting
credibility, or evidence that might go to any impairment or disability
affecting the witness’s credibility.”  Virts
v. State, 739 S.W.2d 25, 29 (Tex. Crim. App. 1987).  The trial court has
broad discretion to impose reasonable limits on cross-examination to avoid
harassment, prejudice, confusion of the issues, endangering the witness, and
the injection of cumulative or collateral evidence.  Lopez
v. State, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000);
see also Hammer v. State, 296 S.W.3d
555, 561 (Tex. Crim. App. 2009).

Generally,
the Texas Rules of Evidence prohibit evidence of crimes, wrongs, or acts to
prove the character of a person to show action in conformity therein.  Tex.
R. Evid. 404(b).  But such
evidence may be admissible for other purposes, such as proof of motive,
opportunity, intent, preparation, plan, or knowledge.  Id. 
For evidence of other crimes or acts to be admissible, it must be
relevant for a purpose other than to show the character of a person and that he
acted in conformity with it.  See id.  Prior allegations of sexual abuse may be used
to impeach a witness’s credibility if there is a showing that the evidence is
probative.  Lopez, 18 S.W.3d at 226.  The
evidence will be considered probative if the prior allegations were similar to
the allegation at bar, and if there is evidence showing that the prior
allegations were false.  See id. at 222-23.  Without a showing of the probative nature of
the evidence, the Confrontation Clause does not require admissibility due to
low probative value of the evidence and the high risk of jury confusion.  Id.
at 226.

Appellant
argues that his cross-examination of Detective Bowling, A.C., A.C.’s
grandmother and father about the prior allegations was admissible to show
A.C.’s modus operandi and to attack
A.C.’s credibility.  At trial, Appellant
elicited testimony from Detective Bowling that, prior to this case, she was
already familiar with A.C. and her family due to a prior sexual abuse
charge.  The trial court did not allow
Appellant to go into whether the allegations in the prior case were false.  Appellant made a bill of exception with
respect to the testimony of A.C. and her grandmother.  A.C’s grandmother testified that to her
knowledge A.C. never made any allegations against her, she did not know who
made the allegation, that she was investigated by CPS but the allegation was
found to be false.  She also stated that
it was A.C.’s mother who told A.C. to make the accusations.

A.C.
testified that she did not make any allegations against her grandmother or her
father and that she did not remember telling CPS these allegations.  Outside of the presence of the jury, A.C.’s
father also testified that his daughter never accused him of any sexual
abuse.  Afterwards, the trial court
overruled Appellant’s objection that the evidence was admissible under the
Sixth Amendment and Texas Rule of Evidence 404(b).

Appellant
has failed to show that A.C. made any prior false allegations of sexual abuse
against her grandmother or father and failed to show that any allegations were
similar to the accusation in this case. 
Moreover, Appellant fails to elaborate on how the admission of such
evidence would establish a modus operandi
that resulted in a false allegation against him where the accusations were made
against family members and not strangers. 
Because the trial court was free to limit cross-examination to prevent jury
confusion and unfair prejudice, the trial court did not err in excluding any
references to the alleged prior false allegations made by A.C.  See
Lopez, 18 S.W.3d at 222-23; see also Hammer, 296
S.W.3d at 561.  Issue Eight is overruled.

Motion to Recuse

Finally, in Issue Ten, Appellant argues that the
trial court judge should have recused himself from this matter because
Appellant was concerned about the trial court’s impartiality.  The State responds that Appellant failed to preserve this
issue for review.  We agree.

In
order to preserve a claim of recusal for appellate review, Appellant was
required to file a verified motion to recuse at least ten days prior to the
date set for trial or other hearing.  See
Tex. R. Civ. P. 18a(a); Wirtz
v. Massachusetts Mut. Life Ins. Co., 898 S.W.2d 414, 422-23 (Tex. App. –
Amarillo 1995, no writ).  This
requirement is mandatory, and failure to comply waives any right to complain
thereafter.  See Vickery v. Texas
Carpet Co., Inc., 792 S.W.2d 759, 763 (Tex. App. – Houston [14th Dist.]
1990, writ denied).  Because no motion to
recuse was ever filed in this case, we conclude that this issue was not
preserved for our review.  Issue Ten is
overruled.

Reformation
of the Written Judgment

In a
footnote, the State asks us to reform the judgment to reflect Appellant’s plea
of true to its first enhancement paragraph that alleged two prior, sequential,
and final felony convictions as well as the jury’s finding of true on the first
enhancement paragraph.  This Court has
the power to modify incorrect judgments when we have the necessary data and
information to do so.  See Tex.
R. App. P. 43.2(b); Bigley v. State, 865 S.W.2d 26, 27-8 (Tex. Crim. App. 1993); Asberry v.
State, 813 S.W.2d 526, 529-30 (Tex. App. – Dallas 1991, pet. ref’d).  The
written judgment reflects that Appellant’s plea and the jury’s findings as to
the first enhancement paragraph are marked “N/A.”  However, this is contrary to the record
because Appellant pleaded true to the first enhancement paragraph and the jury
also found the first enhancement paragraph to be true.  Accordingly, we reform the written judgment
to reflect Appellant’s plea of true to the first enhancement paragraph and that
the jury found the same to be true.

CONCLUSION

We
overrule Appellant’s issues and affirm the judgment of the trial court as
reformed.

 

                                                                        GUADALUPE
RIVERA, Justice

May 23, 2012

 

Before McClure, C.J., Rivera, J., and Antcliff, J.

 

(Do Not Publish)











[1]  Appellant was
also indicted in cause number 20070D04789 for burglary of a habitation with
intent to commit a theft, a second-degree felony.  The case was consolidated for trial with the
present case.  He was found guilty of
both offenses.  Appellant has appealed
both convictions, and we have addressed them as companion cases.  The companion case on appeal is
08-10-00159-CR.

 





[2]  Appellant was included as a possible suspect due to his involvement in another crime on the same night
of this offense which occurred in the same area of A.C.’s home.





[3]  In September 2009, after a jury was duly
empaneled and sworn to try Appellant on the indictment in the present case,
A.C. recognized one of the jurors as one of her school teachers.  After this discovery, the trial court
reviewed the juror’s voir dire answer
and found that the juror had stated that she knew a person by the same name as
A.C., but was unsure if it was the same person. 
The trial court granted Appellant’s motion for mistrial on the grounds
that the juror could not be impartial to Appellant.  In the case before us, Appellant filed a
special plea of jeopardy which the trial court denied after a hearing.